# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

DAMION SMITH,

                Petitioner,              :     Case No. 1:14-cv-803

   - vs -                           District Judge Michael R. Barrett
                                        Magistrate Judge Michael R. Merz

CHARLOTTE JENKINS, Warden,
 Chillicothe Correctional Institution,

                                    :

                Respondent.

# REPORT AND RECOMMENDATIONS

Damion Smith brought this action under 28 U.S.C. § 2254 to obtain habeas corpus relief from his conviction in the Hamilton County Common Pleas Court on charges of aggravated robbery and robbery with a firearm specification (Petition, ECF No. 5, PageID[1] 86).  On Magistrate Judge Bowman's Order (ECF No. 4), the Warden has filed the State Court Record (ECF No. 11) and a Return of Writ (ECF No. 12).  The case became ripe on Smith's filing of his Reply (ECF No. 14).

The case has been transferred to the undersigned for initial report and recommendations on the merits as part of a regular effort to balance the workloads of the Western Division

---

[1] When any document is filed with this Court, the Court's electronic filing system affixes a unique Page Identification Number in the upper right hand corner of every page.  The attention of the parties is directed to this Magistrate Judge's Standing Order of May 8, 2014, which provides in pertinent part "All references to the record in this Court must be to the filed document by title, docket number, and PageID reference.  (E.g., Defendant's Motion to Dismiss, Doc. No. 27, PageID ___.)"  The large majority of cases before this Magistrate Judge are habeas corpus cases with large state court records and correct citation to the record is critical to judicial economy.  Therefore, nonconforming filings will be stricken.

Magistrate Judges.  Decision in the case is reserved to District Judge Barrett.

**Procedural History**

On February 17, 2011, a Hamilton County grand jury indicted Smith on one count of aggravated robbery with a firearm specification, one count of robbery, and one count of possession of cocaine.  A trial jury found him guilty on the first two counts (with the specification) and the cocaine charge was dismissed.  Smith appealed to the First District Court of Appeals raising the following assignments of error:

> 1. Defendant's convictions for aggravated robbery and robbery are against the manifest weight of the evidence and were insufficient to support the convictions.

> 2. The trial court erred in refusing to suppress eyewitness testimony based upon the unreliability of the identification made from the photo array viewed by the victim.

> 3. The Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments of the U.S. Constitution when counsel failed to call an expert witness in eyewitness identification.

(State Court Record, ECF No. 11, PageID 175.)  The First District Court of Appeals affirmed the conviction.  *State v. Smith,* No. C-120181 (1st Dist. Dec. 21, 2012)(unreported, copy at ECF No. 11, PageID 220, et seq.).  Smith appealed to the Ohio Supreme Court, but that court declined to exercise jurisdiction over the appeal.  *Id.*  at PageID 246.

Smith filed an Application to Reopen his appeal under Ohio R. App. P. 26(B).  *Id.*  at PageID 247, et seq.  The First District denied the Application.  *State v. Smith*, No. C-120181 (1st Dist. Sept.5, 2013)(unreported, copy at State Court Record, PageID 279, et seq.)  The Ohio

Supreme Court again declined jurisdiction. *Id.* at PageID 301. Smith then filed the instant case,

pleading the following grounds for relief:

**Ground One:** Conviction against the manifest weight of the evidence and sufficiency of evidence.

**Supporting Facts**: In the case at hand, a man was robbed at gun point and the victim could not identify the assailant at the time of the robbery due to the assailant wearing a mask and only able to see the robber's eyes. The robber took the victim's cell phone, credit cards, back pack and art supplies. The victim, at the time and very date of the robbery, was unable to identify the assailant or even the assailant's eyes, which the victim later testified to.

**Ground Two:** Trial court erred in refusing to suppress eyewitness testimony based upon the unreliability of the identification made from the photo array line up viewed by victim.

**Supporting Facts:** The trial court denied my suppression hearing to suppress the suggestive line up and the eye witness testimony by the victim where said victim claims to have been able to identify me by my eyes from the line up photo array presented to him some three (3) weeks after the robbery. The trial court allowed the State and its witness victim to testify the he, victim, could identify me by my eyes due to his occupation as a "Halloween mask maker." The day of the robbery, the victim was unable to give any distinctive or recognizable description of the robber.

**Ground Three:** Ineffective assistance of counsel (trial) for counsel's failure to call an expert witness in eyewitness identification.

**Supporting Facts:** Trial counsel was well aware of the victim claiming to be able to identify me as the robber by only viewing my eyes and that his occupation, a "Halloween mask maker" is what allowed him to be able to do so. The victim claimed that because he made masks and worked with faces of masks that he could reconstruct human faces by simply viewing eyes.

**Ground Four**: Prosecutorial misconduct for State vouching for its witness's credibility.

**Supporting Facts:** The Prosecutor bombarded the jury with his support of his victim's testimony, thus vouching for him. The victim claimed his job of making "Halloween masks" abled him to

> simply I.D. me as the robber by viewing my photo in the police
> line up. The State kept telling the jury that the victim's occupation
> able him to I.D. me. The State basically presented the victim as an
> "expert" layman in an "unskilled occupation." What the victim did
> was simply "draw" pictures of the "boogymen, monsters, ghouls,
> etc.," not construct human faces and most certainly, not trained in
> the field of forensic science, pathology, etc.

(Petition, ECF No. 5.)

In his Reply, Smith asserts he raised seven grounds for relief, not just the four quoted above.  Grounds Five, Six, and Seven are not pled in the same manner as the first four, but are set out in narrative text in the Petition (ECF No. 5, PageID 110, et seq.).  As best the Court understands those claims, they are as follows:

> **Ground Five**:  Ineffective assistance of appellate counsel for
> failure to raise and preserve ineffective assistance of trial counsel
> for trial counsel's failure to conduct investigations in my case so as
> to dispute and refute the state's case and failing to put the state
> case through a "Meaningful Adversarial Testing Process."

*Id.*  at PageID 110.

> **Ground Six:**  Cumulative Error of the State and of the trial court
> and Violation of Right to a Full and Fair Suppression Hearing.

*Id.*  at PageID 112-13.

> **Ground Seven:** Denial of appeals either by ruling on the merits
> (appellate court) or "simply declining jurisdiction (Ohio Supreme
> Court).

*Id.*  at PageID 113.

Because Smith is proceeding *pro se,* he is entitled to a liberal construction of his pleadings. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).  Therefore the Court will consider these

claims as construed above even though they are not pled with the detail usually required for habeas counsel claims.

# ANALYSIS

## Ground One:  Sufficiency of the Evidence

In his First Ground for Relief, Smith claims his conviction is against the manifest weight of the evidence and is not supported by sufficient evidence.

The manifest weight claim cannot be considered in federal habeas corpus because it is not a violation of the Constitution to convict someone against the manifest weight of the evidence. A weight of the evidence claim is not a federal constitutional claim.  *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1976).

In *State v. Thompkins,* 78 Ohio St. 3d 380 (1997)*,* the Ohio Supreme Court reaffirmed the important distinction between appellate review for insufficiency of the evidence and review on the claim that the conviction is against the  manifest weight of the evidence.   It held:

> In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102, 387 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, *citing Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra*, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the  greater  amount  of  credible evidence, offered in a trial, to support one side of the issue rather

than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief."  (Emphasis added.)

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs*, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

78 Ohio St. 3d at 387.  In *State v. Martin*, 20 Ohio App. 3d 172 (Hamilton Cty. 1983)(cited approvingly by the Supreme Court in *Thompkins*), Judge Robert Black contrasted the manifest weight of the evidence claim:

In considering the claim that the conviction was against the manifest weight of the evidence, the test is much broader.  The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. …

*Martin,* 20 Ohio App. 3d 172, ¶3 of the syllabus.  The consequences of the distinction are important for a criminal defendant.  The State may retry a case reversed on the manifest weight of the evidence;  retrial of a conviction reversed for insufficiency of the evidence is barred by the Double Jeopardy Clause.  *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

On the other hand, as implied by these two Ohio decisions, sufficiency of the evidence is

a federal constitutional right.  An allegation that a verdict was entered upon insufficient evidence

states a claim under the Due Process Clause of the Fourteenth Amendment to the United States

Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship,* 397 U.S. 358 (1970);

*Johnson v. Coyle,* 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th

Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the

crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in
> the light most favorable to the prosecution, any rational trier of fact
> could have found the essential elements of the crime beyond a
> reasonable doubt . . . .  This familiar standard gives full play to the
> responsibility of the trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence and to draw reasonable
> inferences from basic facts to ultimate facts.

*Jackson*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United*

*States v. Somerset,* 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was recognized in

Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).  Of course, it is state law which

determines the elements of offenses; but once the state has adopted the elements, it must then

prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner
> challenges the constitutional sufficiency of the evidence used to
> convict him, we are thus bound by two layers of deference to
> groups who might view facts differently than we would. First, as in
> all sufficiency-of-the-evidence challenges, we must determine
> whether, viewing the trial testimony and exhibits in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781,
> 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the

> evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer,* 541 F.3d 652 (6th Cir. 2008); accord *Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(per curiam).

In deciding this claim on direct appeal, the First District wrote:

> While walking through the parking lot of an apartment complex adjacent to his own, David Molloy was robbed at gunpoint by a man wearing a ninja-type mask. Shortly after the robbery, Molloy's

debit card was used for purchases at several establishments. Smith's car was visible in surveillance video taken at two of the establishments when Molloy's card was used. Further, a receipt from purchases at a third establishment contained Smith's signature.

Smith's photograph was made a part of a photo lineup shown to Molloy by a blind administrator. Molloy identified Smith as his assailant, with 8o percent certainty, based on Smith's eyes, head shape, and skin tone, which he was trained to focus on as part of his job as a sculptor of facial prosthetics for actors.

       * * *

In his first assignment of error, Smith argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. We overrule this assignment of error.

First, upon the evidence adduced at trial, reasonable minds could have reached different conclusions as to whether each element of the offenses had been proved beyond a reasonable doubt. See *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

(State Court Record, ECF No. 11, PageID 221.)  Thus the state court clearly understood what the proper federal constitutional standard was and purported to apply it.

In arguing this ground for relief, Smith conflates a number of different arguments.  He accuses his trial attorney of ineffective assistance for not presenting Exhibit A (ECF No. 5-1, PageID 139), the initial police report, at trial to impeach the victim (ECF No. 5, PageID 101). However, Exhibit A was not made a part of the record at trial and Smith never filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 to introduce evidence which was omitted from the trial record.  He cannot introduce new evidence here.  A habeas court cannot consider post-trial evidence in deciding a *Jackson v. Virginia* claim.  *McDaniel v. Brown*, 558 U.S. 120 (2010).

Smith also, in support of his First Ground for Relief, accuses the prosecutor of misconduct for presenting the victim's testimony without impeaching his own witness by presenting Exhibit A.  But Exhibit A does not show the victim committed perjury and therefore does not show any prosecutorial misconduct.

Continuing to argue the First Ground for Relief, Smith reports an investigation he did on his own while released on bond of questioning a store clerk at Foot Locker (ECF No. 5, PageID 102).  Once again, this Court cannot consider new evidence on a *Jackson v. Virginia* claim. Furthermore, this Court is forbidden to hold an evidentiary hearing to received new evidence. *Cullen v. Pinholster,* 563 U.S. ___, 131 S. Ct. 1388 (2011).

Smith objects to the fact that the victim, whose job involves making masks for actors, was allowed to testify as an expert.  That is simply not what happened.  The victim testified he could identify Smith to an 80% certainty and bolstered his own testimony by recounting his work experience.  It was for the jury to decide whether this was persuasive or not.

Smith similarly complains that Detective Kinney was permitted to testify about a handwriting comparison while not having been qualified as an expert.  But a witness does not have to be qualified as an expert if he is able to testify based on long experience.  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  In any event, the admission of evidence is a state law question and the federal Constitution is usually not implicated.

There is no doubt the victim was robbed at gunpoint by someone.  The record establishes that Smith's car appears in the surveillance video at two locations where credit cards stolen from the victim were used.  Smith admits he used one of the credit cards, although claiming he got it from an uncle who claims he got it from "Mark."  The jury obviously didn't believe this story.

In reviewing a sufficiency of the evidence claim, this Court must defer first to the jury's

credibility decision and then to the appellate court's assessment of the evidence.  When those two levels of deference are applied, the Court finds the First Ground for Relief is without merit.

**Ground Two:  Failure to Suppress Unreliable Eyewitness Identification**

In his Second Ground for Relief, Smith complains that the eyewitness identification by the victim should have been suppressed.  The First District rejected this claim on appeal, holding

> Smith's photograph was made a part of a photo lineup shown to Molloy by a blind administrator.  Molloy identified Smith as his assailant, with 80% certainty based on Smith's eyes, head shape, and skin tone, which he was trained to focus on as part of his job as a sculptor of facial prosthetics for actors.
>
> * * *
>
> In his second assignment of error, Smith argues that the trial court erred by failing to suppress Molloy's identification of him as his assailant. He claims that the identification was unreliable based on the totality of the circumstances, including the police's failure to comply with R.C. 2933.83, and Molloy's level of certainty and his ability to view his assailant.
>
> We find that the record supports the conclusion that under the totality of the circumstances the identification was reliable and admissible. See *State v. Davie,* 8o Ohio St.3d 311, 321-322, 686 N.E.2d 245 (1997), citing *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 LEd.2d 401 (1972); see also *State v. Ruff*, 1St Dist. No. C-110250, 2012-0hio-1910, ¶ 7 ("R.C. 2933.83(C)(1) does not provide an independent ground for suppression").  Accordingly, we overrule the second assignment of error.

(Judgment Entry, State Court Record, ECF No. 11, PageID 220-22.)

The Supreme Court held in *Neil v. Biggers*, 409 U.S. 188 (1972):

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199; *accord, Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  An identification procedure violates a defendant's right to due process if it "was so unnecessarily suggestive as to run the risk of irreparable mistaken identification." *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).  Even if an identification procedure was impermissibly suggestive, the identification is still admissible if it is reliable.  *Id.* at 469, 472.

In *Perry v. New Hampshire*, 565 U.S. ___, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012), the Court held pretrial screening of eyewitness testimony for reliability is required only when the police have arranged suggestive circumstances which lead to the identification.

Smith's argument focuses on why the identification should not have been accepted by the jury, and not on whether the photo identification procedure was unduly suggestive.  He relies in large part on "Exhibit A," which cannot be considered by this Court for the reasons given above under Ground One.  He claims Detective Kinney showed Molloy who the suspect was and then sent him to the photo lineup, but there is no proof in the record that this happened.  He claims no one should believe Molloy's testimony about his acquired skill of making identifications by focusing on eyes, but that was a question of credibility for the jury and Smith offers no proof that the supposed skill was somehow "made up" for purposes of bolstering Molloy's testimony.  He notes that Molloy made no contact with the police after the incident until Detective Kinney acquired a suspect, but that is not an unusual feature of "stranger robbery."

In many ways, Smith's argument has the cart before the horse.  Before applying the *Biggers-Manson* factors, a court must determine that the police-conducted identification

procedure is impermissibly suggestive.  Smith suggests no way in which the photo lineup itself was impermissibly suggestive, particularly given the use of a "blind" administrator – an administrator who did not know which person among those presented to Molloy was the suspect.[2]

The First District's decision is not an objectively unreasonable application of the relevant Supreme Court precedent and the Second Ground for Relief should therefore be dismissed with prejudice.


**Ground Three:  Ineffective Assistance of Trial Counsel**


In his Third Ground for Relief, Smith asserts his trial attorney provided ineffective assistance of trial counsel when he failed to present an expert witness on the fallibility of eyewitness identification.

Smith raised this claim as his third assignment of error on direct appeal.  The First District rejected it, stating:

> We overrule the third assignment of error, because Smith has failed to demonstrate, in the record before us, that counsel's decision to forgo an eyewitness identification expert was deficient, or that prejudice arose from counsel's performance.  See *State v. Madrigal*, 87 Ohio St.3d 378, 390-91, 721 N.E.2d 52 (2000), citing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St. 3d 136, 538 N.E.2d 373 (1989); see also *State v. Keeling*, 1st Dist. No. C-010610, 2002-0hio-3299, 8-9·

(Judgment Entry, State Court Record, ECF No. 11, PageID 222.)

---

[2] Having the photo lineup administered by an officer who does not know which photo is of the suspect has been identified as one of the most crucial reforms for preventing erroneous eyewitness identifications.  Brandon L. Garrett, Convicting the Innocent, p.81. (Cambridge, Mass. 2011)(An intensive study of the first 250 DNA exonerations.)

As implied by the First District's decision, the governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S. 111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

> proceeding would have been different.  A reasonable probability is
> a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694.  *See also Darden v. Wainwright,* 477 U.S. 168 (1986); *Wong v. Money,* 142

F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987).  *See generally*

Annotation, 26 ALR Fed 218.

The record on direct appeal of course showed that no eyewitness identification expert

testified.  But that is all it showed.  There was no evidence to show consideration of calling such

an expert or what the expert would have testified to in this case.  Nor is the appellate record at all

supplemented by additional evidence submitted in post-conviction because Smith did not file a

petition for post-conviction relief.  Without any proof of what such a witness would have said,

Smith cannot show it was either deficient performance or prejudicial to his case not to call such a

witness.

Instead of focusing on that question, Smith argues in his Memorandum in Support about

Detective Kinney's handwriting comparison testimony (ECF No. 5-1, PageID 123, 25.)  Smith

then adds three pages of argument on this issue, but points to nothing in the record which would

show what an expert witness would have testified to. *Id.*  at PageID 125-27.

In his Reply, Smith substitutes rhetoric for evidence.

> Smith is absolutely amazed by this statement from the state. Either
> the state is reading some other petitioners ground for relief in a
> writ or the state is simply so incompetent or out-right fraudulent in
> trying to mislead this court from the truth. To prove this are several
> facts:  First, Smith did in fact show what an expert eyewitness
> testimony would have revealed to the  jury regarding the "
> Ridiculous and out-right fraudulent testimony presented by the
> alleged victim in this case of being able, due to employment of
> making simple "Halloween Mask", of I.D.'ing an assailant just
> from seeing ones EYE'S. Secondly, Smith or anyone could in NO
> WAY be able to give any court the testimony of an expert.  Smith
> or anyone wouldn't be able to state what an expert would actually

15

> testify to. That in itself is utterly perposterous [sic] and fraudulant
> [sic] to do.

(ECF No. 14, PageID 1124.)

Smith misunderstands his burden.  It is not sufficient for a habeas petitioner to speculate

what an uncalled and unidentified witness would have testified to.  Smith presents no case law

from the Supreme Court (or indeed any other court) holding that it is *per se* ineffective assistance

of trial counsel to fail to call an expert on the fallibility of eyewitness identification in every case

in which identification is an issue.  To prevail on that claim, it was incumbent on Smith to

identify and present the testimony which could have been given in a post-conviction petition,

which was never filed in this case.

Smith has failed to establish that his trial attorney provided ineffective assistance by not

calling an expert on eyewitness identification.  Therefore the First District's decision is not an

objectively unreasonable application of *Strickland, supra*.  The Third Ground for Relief should

be dismissed with prejudice.


**Ground Four:  Prosecutorial Misconduct by Vouching**


In his Fourth Ground for Relief, Smith asserts the prosecutor committed misconduct by

vouching for the credibility of the victim.

This claim was not raised on direct appeal, but Smith filed an Application for Reopening

under Ohio R. App. P. 26(B), asserting that it was ineffective assistance of appellate counsel to

fail to raise this as an assignment of error on direct appeal.  Smith pleads this claim in the

Petition as a direct claim of prosecutorial misconduct at trial, not as a claim of ineffective

assistance of appellate counsel.  And in his Memorandum in Support, he labels his argument as being about ineffective assistance of appellate counsel, but then proceeds to argue it as if he had resurrected the claim by seeking to reopen the appeal.

An Application under Rule 26(B) does not resurrect for decision on the merits claims that could have been but were not raised on direct appeal.  An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012), *citing Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001).  The *Lott* court explained that permitting an Ohio prisoner to raise a substantive claim in a Rule 26(B) motion "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel." *Id.*

In his 26(B) Application, Smith pled as unconstitutionally omitted Assignment of Error Number Two:

> When a Prosecutor's improper actions infect the entire trial proceedings with unfairness, the Appellant's constitutional rights to a Fair Trial and the Due Process of Law guaranteed by the 5th and 14th Amendments of the United States Constitution and Article I, Section 16 of the Ohio Constitution are violated.

(Application, State Court Record, PageID 254.)

The First District denied the Application for Reopening on this claim by holding:

> Finally, appellate counsel was not ineffective in failing to present an assignment of error contending that Smith's convictions had been the product of prosecutorial misconduct in the form of remarks by the assistant prosecuting attorney concerning the evidence and the credibility of the state's witnesses. Smith cannot be said to have been denied a fair trial, because the record makes apparent beyond any reasonable doubt that, in the absence of the

17

alleged misconduct, the jury still would have found Smith guilty. See *State v. Smith,* 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984).

(Entry, State Court Record, PageID 279.)

A criminal defendant's right to effective assistance of counsel extends to the first appeal of right. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *United States v. Cronic,* 466 U.S. 648 (1984). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of  appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing  Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Here the First District decided Smith's ineffective assistance of appellate counsel claim on the merits. That claim is

preserved for decision by this Court and the issue is whether the claim of prosecutorial misconduct is so strong that omitting it must have been ineffective assistance of appellate counsel, despite the decision of the First District to the contrary.

In arguing this claim, Smith states "the prosecutor . . . continuously bombarded the jury with his own opinion as to the victims [sic] credibility . . ." (Memorandum in Support, ECF No. 5-1, PageID 129.) Then, instead of citing any place in the record where the supposed vouching took place, Smith changes direction to argue about probable cause for arrest and Confrontation Clause rights. *Id.* at PageID 129-31. In his Reply, Smith again offers no record citations, but argues summarily "It is clear from the record that the prosecution clearly vouched for its witness's [sic] and evidence not in the record in order to gain a conviction at any cost." (ECF No. 14, PageID 1120.)

When we look behind the First District's decision on the 26(B) Application to the Application itself, there are also no transcript page references, but Smith mentions the prosecutor's closing argument several times (State Court Record, ECF No. 11, PageID 256). The Magistrate Judge has read Mr. Tharp's closing argument. *Id.* at PageID 923-57. Tharp begins by acknowledging his duty to avoid vouching. *Id.* at 923-24. He points out that Detective Kinney's testimony as to certain events is corroborated by Smith's own testimony. *Id.* at PageID 929. As far as the Magistrate Judge can see, there is no instance in the closing argument where Mr. Tharp vouches for any of his witnesses.

Mr. Smith may be confused by the difference between vouching and arguing for the credibility of one's witnesses. "Vouching" means saying to a jury, you should believe my witnesses because I believe them. This is improper because the prosecutor is not a witness, subject to cross-examination under the Confrontation Clause like other witnesses. But when a

prosecutor argues that a witnesses is credible for other reasons – e.g., he has no motive to lie or his story hangs together or he knows from experience what's he's talking about – those are perfectly acceptable arguments about credibility.

Because there is no vouching cited by Smith or apparent in the closing argument to which Smith directs the Court's attention, it was not ineffective assistance of appellate counsel to fail to claim prosecutorial misconduct on appeal.  The First District's decision is therefore neither contrary to nor an objectively unreasonable application of Supreme Court precedent.  The Fourth Ground for Relief should therefore be dismissed with prejudice.

**Ground Five:  Ineffective Assistance of Appellate Counsel for Failure to Claim Ineffective Assistance of Trial Counsel for Failure to Investigate**

In his Fifth Ground for Relief, Smith claims his trial appellate attorney provided ineffective assistance when he did not raise as an omitted assignment of error that trial counsel failed to conduct any investigation.  As with the Fourth Ground for Relief, Smith pleads this as an ineffective assistance of appellate counsel claim, but then argues it as an ineffective assistance of trial counsel claim (Memorandum in Support, ECF No. 5-1, PageID 131-33).  That is, his argument is all about what his trial attorney should have done, not how his appellate attorney was ineffective for not making this argument.

In his 26(B) Application, Smith presented a much narrower claim which the First District decided as follows:

> In his application, Smith contends that his appellate counsel was ineffective in failing to assign as error his trial counsel's ineffectiveness in failing to counter evidence that Smith had perpetrated the aggravated robbery with evidence identifying other

> users of the credit card and cell phone stolen from the victim. Because this challenge depends for its resolution upon evidence outside the trial record, the appropriate vehicle for advancing it is a postconviction petition. See *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Therefore, appellate counsel was not ineffective in failing to assign this matter as error on appeal.

(Entry, ECF No. 11, PageID 280.) In arguing this claim in habeas. Smith speculates about all the information that might have been gathered by subpoenaing the records of use of the cell phone stolen from the victim or interviewing the sales clerk at the Foot Locker where one of the stolen credit cards was used (Memorandum in Support, ECF No. 5-1, PageID 132-33). However, as the First District noted, none of this evidence was presented to the state courts by way of a petition for post-conviction relief. Without proof of what an investigation (of any scope) would have revealed, Smith cannot prove it was prejudicial to fail to conduct the investigation or that appellate counsel provided ineffective assistance by failing to that as an assignment of error.

Therefore the Fifth Ground for Relief is without merit.


**Ground Six: Cumulative Error**


In his Sixth Ground for Relief, Smith claims he is entitled to vacation of his conviction because of cumulative error (Memorandum in Support, ECF No. 5-1, PageID 134-35).

This claim was never presented to the Ohio courts and is thus procedurally defaulted. Failure to raise a constitutional issue at all on direct appeal is subject to the cause and prejudice standard of *Wainwright*. *Murray*, 477 U.S. at 485. *Mapes v. Coyle,* 171 F.3d 408, 413 (6th Cir. 1999); *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *Leroy v. Marshall*, 757 F.2d 94, 97 (6th

Cir.), *cert denied,* 474 U.S. 831 (1985). Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)(citations omitted). "Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.'" *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7(1999)); *see also Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ("A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]").

Therefore the Sixth Ground for Relief should be dismissed with prejudice.


**Ground Seven:  Denial of Appeals**


In the body of his argument for this ground for relief, Smith repeats the arguments outlined above as to each claim for relief to show the First District was in error. This Report already provides analysis on each of these individual claims.

On the face of the Petition, Smith also claims the Supreme Court of Ohio violated his constitutional rights by declining to hear his appeal. There is no federal constitutional right to appeal criminal verdicts for error review. *McKane v. Durston*, 153 U.S. 684 (1894), cited as still good law in *Lopez v. Wilson,* 426 F.3d 339, 355 (6th Cir. 2005). "Due process does not require a State to provide appellate process at all." *Goeke v. Branch*, 514 U.S. 115, 120 (1995). Thus there is no constitutional right to require the Supreme Court of Ohio to hear a case.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 6, 2015.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).